OPINION
{¶ 1} Defendant, Marvis Walton, appeals from his conviction and sentence for aggravated robbery.
 {¶ 2} On October 29, 2003, between 6:50-7:00 p.m., Isarel Holloway went to the Shell station at Free Pike and Gettysburg Avenue in Dayton, to buy gas for his car. While preparing to pump gas into his vehicle, Holloway was robbed at gunpoint by two men. One of the men hit Holloway with a gun and held the gun under his chin while demanding money, while the other went through Holloway's pockets and took his wallet which contained about $115. The two men then ran toward their vehicle, a light blue or lavender four-door Buick Regal with a cloth top, and drove away. The service station attendant who was also the owner of the station, Jatar Shaqra, called police.
 {¶ 3} When police arrived, Holloway told them what had happened and provided a description of the robbers and their vehicle, including a partial license plate number of 1, 5, and A or E. A bystander, David Barnes, had noticed the blue Buick Regal, including part of the license plate number, 1, 5, E, as he approached the Shell station on foot. Barnes also observed a man standing next to the open door of that vehicle, talking on a cell phone that emitted a blue light. Police put out a broadcast for the suspects and their vehicle.
 {¶ 4} Several hours later, Jatar Shaqra was at another Shell service station at Third Street and Gettysburg Avenue that he also owns, when he observed a Buick Regal that matched the description of the vehicle used by the robbers. Shaqra called police and provided a complete license plate number for the vehicle. The vehicle was stopped by police shortly after it left the Shell station. There were four occupants inside the vehicle, including Defendant, Marvis Walton, and Roger Frost. Police contacted Holloway and asked him to come to the scene to learn whether he could identify any of the men as the ones who robbed him. Holloway identified Defendant and Frost as the two robbers. A search of the blue Buick Regal revealed a cell phone, belonging to Frost, that emitted a blue light.
 {¶ 5} Defendant and Frost were initially indicted on November 18, 2003, on one count of aggravated robbery, R.C. 2911.01(A)(1). Defendant and Frost were reindicted on May 14, 2004, on the same charge, but with a firearm specification attached. R.C. 2941.145. Defendant filed a notice of alibi, which he later amended, claiming that he was at Colonel White High School at the time this offense was committed. Following a jury trial, Defendant was found guilty of aggravated robbery but not guilty of the firearm specification. The trial court sentenced Defendant to four years in prison.
 {¶ 6} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 7} "SINCE A COMPLETE TRANSCRIPT OF THE TRIAL PROCEEDINGS IS NOT AVAILABLE DEFENDANT MARVIS WALTON WAS DENIED HISSIXTH AMENDMENT RIGHT TO COUNSEL UNDER THE UNITED STATES CONSTITUTION."
SECOND ASSIGNMENT OF ERROR
 {¶ 8} "MARVIS WALTON WAS DENIED DUE PROCESS OF LAW SINCE HE WAS NOT PROVIDED A `COMPLETE, FULL, AND UNABRIDGED TRANSCRIPT' OF HIS TRIAL."
 {¶ 9} Defendant filed a motion in this court prior to any briefs being filed, asking that we vacate his conviction because the typed transcript of the trial was incomplete and therefore insufficient to assure meaningful appellate review due to the numerous instances where the words being spoken were "inaudible" or "indiscernible." The State filed a memorandum in opposition to Defendant's motion.
 {¶ 10} On March 23, 2005, we overruled Defendant's motion and ordered appellate counsel to view the videotape recording of the trial proceedings. We additionally directed appellate counsel to utilize App.R. 9(E), if necessary, to apply to the trial court for correction or supplementation of the inaudible portions of the record.
 {¶ 11} On May 23, 2005, Defendant filed a motion in the trial court pursuant to App.R. 9(E), seeking correction or modification of the record. The trial court directed trial counsel to meet with its judicial assistant to review the record to determine if it could be corrected. On July 15, 2005, they met for three or four hours. It was discovered that much of what the transcriber found to be inaudible was, in fact, discernable upon careful attention. On July 21, 2005, the trial court ordered that the inaudible portions of the typed transcript be re-transcribed. A Correction of Record transcript was then filed on August 31, 2005.
 {¶ 12} In his first two assignments of error, which are related, Defendant argues that he was denied due process and deprived of the effective assistance of counsel on appeal because the transcript of the trial proceedings is not full and complete, that there are items missing from the record, and therefore it is insufficient to permit meaningful appellate review. Defendant points out that the Correction of Record transcript that was prepared to remedy this problem still contains one hundred forty-five instances wherein the words being spoken are "indiscernible."
 {¶ 13} The importance to meaningful appellate review of a complete, full, and unabridged transcript of the trial proceedings is well-established. State ex rel. Spirko v. Judgesof the Court of Appeals (1986), 27 Ohio St.3d 13, 17-18. Nevertheless, it is incumbent upon Defendant to demonstrate how incompleteness in the record precludes effective appellate review. A general assertion that this is so will not suffice. Defendant must demonstrate that effective review will be precluded, and that prejudice will result from the incompleteness of the record. State v. Williams, 73 Ohio St.3d 153,1995-Ohio-275. Absent an indication that Defendant has been prejudiced by the absence of items from the record, reversible error has not been demonstrated. Id.
 {¶ 14} The overwhelming majority of instances in the transcript of the trial proceedings where the conversation is "inaudible" or "indiscernible" involve conversations by the attorneys with the trial court concerning objections or during bench conferences, not testimony by the witnesses. In addition, some of these instances in the typed transcript where the transcriber originally denoted the conversation as "indiscernible" have been supplemented in pencil with the words spoken, apparently the result of trial counsel's joint efforts in reviewing the videotape recording of the trial proceedings. Defendant does not suggest, much less demonstrate, how the absence of any specific item from this record will preclude effective review or result in prejudice to him. Rather, Defendant makes only a general assertion that incompleteness in this record will preclude effective appellate review. That is not sufficient. Absent an indication that Defendant has been prejudiced by the incompleteness of this record, no reversible error is demonstrated. Williams, supra.
 {¶ 15} The first and second assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 16} "THE TRIAL COURT ERRED IN FAILING TO GIVE THE JURY INSTRUCTIONS REGARDING MARVIS WALTON'S ALIBI."
 {¶ 17} On December 12, 2003, Defendant timely filed a notice of alibi, stating that he was "at or near 3501 N. Main Street, Dayton, at the time of the alleged aggravated robbery offense." On May 14, 2004, ten days prior to trial, the State filed a motion to have Defendant's notice of alibi stricken and his alibi evidence excluded or, in the alternative, to require Defendant to file a notice of alibi that complies with Crim.R. 12.1, which requires "specific information" concerning the place where Defendant claims to have been.
 {¶ 18} In response to the State's motion, on May 19, 2004, five days before trial, Defendant filed an amended notice of alibi, stating that he was "on the grounds of Colonel White High School, 501 Niagara Avenue, Dayton, at the time of the alleged aggravated robbery offense." Subsequently, Defendant and his co-defendant, Roger Frost, were tried together, and at trial they presented the testimony of Defendant and several other witnesses including Payne, Kenzie, Priest and Johnson, all of whom testified that Defendant and Frost were at Colonel White High School at the time of the offense, and that from there they had gone to Rooster's restaurant at 3501 N. Main Street in Dayton.
 {¶ 19} At the conclusion of the trial court's instructions to the jury, and before this case was submitted to the jury, Defendant and Frost objected to the trial court's announced decision not to give an instruction on alibi which Frost had requested. The trial court overruled that objection and refused to give an alibi instruction, reasoning that the State must prove beyond a reasonable doubt that these defendants committed the robbery and, in any event, the standard instruction in Ohio Jury Instructions on alibi is confusing.
 {¶ 20} Defendant now complains that the trial court erred in refusing to instruct the jury on alibi. We agree.
 {¶ 21} The general rule in Ohio regarding special instructions in a criminal case is that if the requested instructions are correct, pertinent, and timely presented, they must be included, at least in substance, in the general charge.State v. Frost, 164 Ohio App.3d 61, 2005-Ohio-5510; State v.McCarthy (1992), 65 Ohio St.3d 589, 593, citing Cincinnati v.Epperson (1969), 20 Ohio St.2d 59. Where a defendant files a timely notice of alibi, presents evidence to support the contention, and relies on alibi as the sole defense, the trial court has a statutory duty pursuant to R.C. 2945.11 to charge the jury on alibi, whether or not Defendant requests such an instruction. Frost, supra; State v. McDade (Jan. 11, 1995), Montgomery App. No. 14339.
 {¶ 22} In the companion appeal by Defendant's co-defendant, Roger Frost, we reversed Frost's conviction, in part, because the trial court failed to give the requested jury instruction on alibi. Frost, supra at ¶ 34-38. Defendant argues that because the issue he raises and the operative facts are identical to his co-defendant Frost's case, his conviction must likewise be reversed due to the trial court's failure to give the requested instruction on alibi. We agree.
 {¶ 23} The State argues that the particular alibi Defendant asserted in his amended notice filed on May 19, 2004, which he relied upon at trial, was different from the alibi he asserted in his original notice that he filed on December 12, 2003. Because Defendant's amended notice was not timely filed at least seven days before trial, as Crim.R. 12.1 requires, the State asserts that the trial court was not obligated to give an instruction on alibi because Defendant did not provide a timely notice of the particular alibi he relied upon at trial. We are not persuaded by this argument.
 {¶ 24} Defendant's original notice of alibi was timely filed. It was only in response to the State's motion to strike Defendant's original notice of alibi, which invited Defendant to file a notice containing more "specific information" as to the place where Defendant claims to have been, that Defendant then filed an amended notice of alibi. After this amended notice of alibi was filed, the State did not complain or raise any issue either before or during trial that the amended alibi differed from the original alibi, or that the amended notice of alibi was filed only five days before trial instead of seven, as Crim.R. 12.1 requires.
 {¶ 25} By failing to timely object or raise these issues at a time when the trial court could have ruled on the timeliness of Defendant's supplemental notice of alibi, the State has waived the error in terms of Defendant's compliance with Crim.R. 12.1 that it now attempts to raise on appeal. State v. Williams
(1977), 51 Ohio St.2d 12; State v. Glaros (1960),170 Ohio St. 471. In any event, the remedy provided by Crim.R. 12.1 for failure to timely file a notice of alibi, exclusion of the alibi evidence, is discretionary with the court, not mandatory. Obviously, the trial court did not exclude the alibi evidence in this case.
 {¶ 26} In response to the State's motion to strike Defendant's notice and exclude his alibi evidence because the notice did not contain specific information as to the place where Defendant claims to have been, Defendant subsequently filed an amended notice of alibi, in which he provided more specific information as to his whereabouts at another location at the time of the offense. Defendant then presented evidence at trial which supported the contention. Defendant's contention as to his whereabouts at the time of the offense are not inconsistent. Defendant claims that he was at Colonel White High School until about 6:55 p.m., at which time he went from there directly to Rooster's restaurant at 3501 N. Main Street, Dayton, where he remained for two hours. The offense occurred between 6:50-7:00 p.m. Defendant relied upon alibi as his sole defense.
 {¶ 27} Under these facts and circumstances we conclude, as we did in the co-defendant Frost's case, that the trial court erred in refusing to instruct the jury on alibi. On this record, we cannot say that Defendant was not prejudiced by the trial court's failure to give the alibi instruction.
 {¶ 28} The third assignment of error is sustained. The judgment of the trial court will be reversed and this cause remanded for a new trial.
Fain, J. and Donovan, J., concur.