[Cite as *State v. Brown*, 2024-Ohio-1333.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ANTHONY S. BROWN, JR.,

    DEFENDANT-APPELLANT.

CASE NO. 1-22-78

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2020 0142

Judgment Affirmed

Date of Decision:  April 9, 2024

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Anthony Brown, Jr. ("Brown"), appeals the judgments of the Allen County Court of Common Pleas denying his motion for new trial and his conviction and sentencing. For the reasons that follow, we affirm.

{¶2} On July 16, 2020, the Allen County Grand Jury indicted Brown on the following five criminal counts: Count One, trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(4)(e), a first-degree felony; Count Two, trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(4)(f), a first-degree felony; Count Three, possession of controlled substances in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony; Count Four, aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), a fifth-degree felony; and Count Five, tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a fifth-degree felony. These indictments stem from a series of drug-related events involving Brown and a confidential informant ("CI") that took place at a duplex located at 521 1/2 North Charles Street, Lima, Allen County, Ohio on May 18, 2020 and on May 26, 2020.

{¶3} Brown's case pended in the trial court until April 4, 2022 when the State dismissed Count Three of the indictment. Then, Brown's case proceeded to a jury trial on April 11 and 13, 2022. Thereafter, the jury found Brown guilty of Counts One, Two, Four, and Five.

{¶4} However, just days after the verdict, Brown's attorney died unexpectedly. As a result, Brown employed a new attorney. Brown's new attorney filed several motions in the trial court including a motion for new trial pursuant to Crim.R. 33(A)(1). He also filed a motion for record of the trial, a notice of a proffer of an intended defense witness, and a request for discovery seeking the recorded-jail calls between Brown and his deceased trial counsel. Lastly, Brown's new attorney requested the trial court for additional time to supplement the record with various "sidebar" and other conferences with the trial judge that took place in and out of court.

{¶5} On November 9, 2022, Judge Terri L. Kohlrieser ("Judge Kohlrieser"), who presided over Brown's trial, recused herself for the limited purpose of permitting another judge to rule on the motion for a new trial finding "that [she] may have a potential conflict as to the resolution of this motion." (Doc. No. 240). Brown's case was then transferred to another judge's docket.

{¶6} On November 23, 2022, the new judge issued a judgment entry denying Brown's motion for new trial pursuant to Crim.R. 33(A)(1). Then, Brown's case was returned to Judge Kohlrieser's docket for sentencing.

{¶7} On December 5, 2022, the trial court (*now* Judge Kohlrieser) sentenced Brown to a mandatory minimum prison term of eight years up to a maximum of 12 years under Count One and a mandatory three-year prison term under Count Two.

Further, the trial court sentenced Brown to a non-mandatory 12-month prison term as to Count Four and a non-mandatory prison term of 24 months for Count Five. Finally, the trial court ordered the terms be served concurrently to one another for an aggregate sentence of eight years to 12 years in prison.

**{¶8}** Brown filed a timely notice of appeal and also filed a motion for a remand to complete the record, which we denied.[1] Brown raises the following four assignments of error for our review.

### First Assignment of Error

**Mr. Brown was denied the effective assistance of counsel at trial, in violation of his rights to the same under the Ohio Constitution and the United States Constitution.**

### Second Assignment of Error

**The conviction for Count II was against the manifest weight of the evidence.**

### Third Assignment of Error

**The conviction for Count II was not supported by sufficient evidence.**

### Fourth Assignment of Error

**The failure of the Trial Court to record all of the proceedings and the denial of the Trial Court to conduct an evidentiary hearing as to those omissions violated Mr. Brown's right to due process, assured to him by the Ohio Constitution and the United States Constitution, both at trial and as to his motion for new trial.**

---

[1] Brown alleged that he was unable to provide a complete record because sidebar and chamber conferences were not recorded. Furthermore, he argued that he was unable to prepare a statement of the evidence.

{¶9} For ease of our discussion, we will review the fourth assignment of error first, followed by the second and third assignments of error together, and concluding with Brown's first assignment of error.

### Fourth Assignment of Error

**The failure of the Trial Court to record all of the proceedings and the denial of the Trial Court to conduct an evidentiary hearing as to those omissions violated Mr. Brown's right to due process, assured to him by the Ohio Constitution and the United States Constitution, both at trial and as to his motion for new trial.**

{¶10} This assignment of error, awkwardly worded, avers that the trial court erred by failing to record all of the proceedings, and to conduct an evidentiary hearing on his motion to complete the record.[2] Since Brown's argument is written in the conjunctive and because it is dispositive of all portions of his argument, we need only address whether he was prejudiced by the trial court's alleged failure to record the criminal proceedings.

### *Analysis*

{¶11} Crim.R. 22 governs the recording of criminal proceedings and provides in its pertinent parts:

In serious offense cases all proceedings shall be recorded.

* * *

---

[2] Importantly, Brown did not assign the denial of his motion for new trial as a separate assignment of error.

> Proceedings may be recorded in shorthand, or stenotype, or by any other adequate mechanical, electronic or video recording device.

The Supreme Court of Ohio has specifically addressed Crim.R. 22, holding:

> that reversal of convictions and sentences on grounds of some unrecorded bench and chambers conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant has failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, *and* (3) material prejudice resulted from the failure to record the proceedings at issue.

(Emphasis added.) *State v. Palmer*, 80 Ohio St.3d 543, 554 (1997). Further, the Supreme Court of Ohio has specifically "repeatedly refused to reverse convictions or sentences on the basis of unrecorded conferences when a defendant has not" requested that unrecorded conferences be recorded. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 160.

{¶12} Germaine to the discussion at hand, "the failure to record sidebar discussions during a trial does not implicate a constitutional right". *State v. Rosemond*, 1st Dist. Hamilton No. C-180221, 2019-Ohio-5356, ¶ 28, citing *State v. Issa*, 93 Ohio St.3d 49, 74 (2001) (Cook, J., concurring). Therefore, Brown's assertions notwithstanding, we consider whether Brown has demonstrated prejudice.

{¶13} Even though Brown argues that "sidebar conferences * * * were not transcribed", the record reveals otherwise. (Appellant's Brief at 19). Specifically, the sidebar conferences were recorded, but due to an unexplained recording problem, they were inaudible. Nevertheless, there is nothing in the record to suggest human error caused the problem. Indeed, we recognize that """"recording equipment is not infallible and is subject to unanticipated malfunctions."""" *Mansfield v. Rembert*, 5th Dist. Richland No. 2023 CA 0007, 2023-Ohio-3787, ¶ 14, quoting *Cleveland v. McGervey*, 8th Dist. Cuyahoga No. 110770, 2022-Ohio-3911, ¶ 24, quoting *State v. Walton*, 2d Dist. Montgomery No. 20615, 2006-Ohio-1974, ¶ 13, citing *State ex rel. Spirko v. Judges of the Court of Appeals*, 27 Ohio St.3d 13, 17-18 (1986). Notably, malfunctions of the recording equipment in the trial court do not result in *per se* prejudice. *Cleveland* at ¶ 24.

{¶14} Here, Brown merely makes a general averment (on appeal) that the unrecorded/missing information *may* "include[] possible [] indicia of intoxication" of his trial counsel relevant to an ineffective-assistance-of-counsel claim.

{¶15} In our review of the record it is evident that various "sidebar" discussions are inaudible. It is also evident that in chambers conferences with the trial judge were not recorded because none were found in the record. Nevertheless, Brown's argument is without detail and is speculative as to what occurred and how it prejudiced him. The mere failure to record a conference is, on its own, insufficient to demonstrate prejudice. *See Rosemond*, 2019-Ohio-5356, at ¶ 31. Speculative

prejudice is insufficient to demonstrate material prejudice. *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 123.

{¶16} Because Brown cannot demonstrate *any* prejudice, let alone material prejudice by the purported inadequacy of the record, his argument fails.

{¶17} For these reasons above, Brown's fourth assignment of error is overruled.

### Second Assignment of Error

**The conviction for Count II was against the manifest weight of the evidence.**

### Third Assignment of Error

**The conviction for Count II was not supported by sufficient evidence.**

{¶18} In his second and third assignments of error, Brown argues that his trafficking-in-cocaine conviction (under Count Two) is based on insufficient evidence *and* is against the manifest weight of the evidence. In particular, in his third assignment of error, Brown argues that the State presented insufficient evidence to establish that the substance sold was a controlled substance. In his second assignment of error, Brown argues that the weight of the evidence demonstrates that the jury lost its way (by finding him guilty) because the drug transaction did not involve a controlled substance, but rather a counterfeit-controlled substance.

*Standard of Review*

**{¶19}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept individually.

**{¶20}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds*, *Smith*, 80 Ohio St.3d at 89, 102, fn. 4. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶21} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

{¶22} We begin by addressing Brown's sufficiency-of-the-evidence argument in his assignment of error as it relates to Count Two of the indictment. In Count Two of the indictment, Brown was indicted for trafficking in drugs under R.C. 2925.03(A)(1), (C)(4)(f). To convict Brown of that charge, the State was required to prove that he did "knowingly" "[s]ell or offer to sell a controlled substance or a controlled substance analog". R.C. 2925.03(A)(1). Further, the State

-10-

must prove that "the *drug* involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine" and "the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine". (Emphasis added.) R.C. 2925.03(C)(4)(f). Under R.C. 2925.03(I), the definition of drug includes "any substance *that is represented* to be a drug". (Emphasis added.)

{¶23} Here, Brown argues that his situation is analogous to that as found in *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, where the defendant sold counterfeit drugs. In *Chandler*, the Supreme Court of Ohio concluded that the trafficking conviction may be upheld, but the major drug offender specification may not be applied, if the substance is recovered and does not contain some detectible amount of the controlled substance. *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, ¶ 9 (offering a substance as crack cocaine later determined to be baking soda). Unlike *Chandler*, the drug testing performed by the Bureau of Criminal Investigation ("BCI") herein did not identify *any* non-controlled substances or controlled substances alike. Thus, *Chandler* is factually dissimilar and inapplicable to the case at bar.

{¶24} In *Garr v. Warden, Madison Corr. Inst.*, 126 Ohio St.3d 334, 2010-Ohio-2449, ¶ 27, the Supreme Court explained:

> *Chandler* did not address the principle that the [S]tate can establish any element of any crime through circumstantial evidence As we stated in *State v. Jenks* (1991), 61 Ohio St.3d 259, 272-273, 574

N.E.2d 492, "there is but one standard of proof in a criminal case, and that is proof of guilt beyond a reasonable doubt. This tenet of the criminal law remains true, whether the evidence against a defendant is circumstantial or direct."

**{¶25}** *Chandler*, as clarified by *Garr*, does not support the conclusion that because the State recovered and tested the substance at issue in Count Two, it could not have proven the elements of R.C. 2925.03(A)(1) and (C)(4)(f) unless test results showed a detectable amount of cocaine had been admitted into evidence. As *Garr* observed, "*Chandler* did not address the principle that the [S]tate can establish any element of any crime through circumstantial evidence." *Garr* at ¶ 27.

**{¶26}** Moreover, *Chandler* recognized that "a person can be convicted for offering to sell a controlled substance in violation of R.C. 2925.03(A)(1) without actually transferring a controlled substance to the buyer." *Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, at ¶ 9. The problem in *Chandler* arose because the penalty provision required proof that the substance offered for sale contained cocaine, and testing showed the substance in that case was baking soda. *Id.* at ¶ 3, 18.

**{¶27}** To prove that Brown sold a controlled substance, the State presented the testimony of Sarah Tipton ("Tipton") from BCI. Tipton testified that the substance (in State's Exhibits 14) showed indications of being cocaine, but the lab had an insufficient sample to be able to positively identify the substance as cocaine.

**{¶28}** At trial, the State also presented the testimony of American Township Chief Michael Haines ("Haines"). Haines testified that during the May 26, 2020

-12-

controlled buy involving Brown, the West Central Ohio Crime Task Force utilized a confidential informant to buy drugs in Lima, Allen County, Ohio.

**{¶29}** Following Haine's, the State introduced the testimony of Jonathan Doenges, the confidential informant ("CI") who bought drugs from Brown. The CI knew Brown through his brother. According to the CI, his brother arranged for him to purchase cocaine from Brown for $2,000 on May 26th. The CI testified that he made sure his brother was at work at the time of the transaction so his brother would not be present during the drug buy. The CI testified that he remained in his car until his brother let him know via text message that it was okay for him to approach Brown's front door. After receiving the okay from his brother, the CI went to Brown's house and was let in. The CI was directed into the living room, and Brown then approached (the CI) to verify the amount of cocaine requested. This conversation was corroborated by the audio recording of the drug buy. (*See* State's Ex. 16). Brown then gave the CI a white substance representing it to be cocaine. The CI handed him the money and exited the house. Thereafter, the CI went to the prearranged location to turn the white substance over to law enforcement and begin the post-drug-buy-search process.

**{¶30}** At trial, the audio and video recording of the May 26th drug buy was played for the jury and Brown can be heard verifying that the CI wanted "a half on top of a zip". (*See id*.). Further, the CI testified that a "zip" is the equivalent of an

ounce. The CI identified Brown as the person involved in the transaction through a photo lineup and at trial. (*See* State's Ex. 1).

{¶31} Later testing revealed the white substance weighed 41.50g +/- 0.04g. However, according to Tipton the amount of any controlled substance in the sample was too weak for a positive for identification. Nevertheless, Tipton testified that the substance showed indications of being cocaine. Importantly, and at all times relevant, Brown represented the white substance to be cocaine.

{¶32} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of R.C. 2925.03(A)(1), (C)(4)(f) were proven beyond a reasonable doubt with respect to Count Two, trafficking in drugs.

*Manifest Weight of the Evidence Analysis*

{¶33} Notably, Brown comingles his sufficiency-of-the-evidence and manifest-weight-of-the-evidence arguments in his merit brief and raises the identical argument with respect to both. Indeed, his argument sounds in sufficiency, which we have already addressed above. Nonetheless, the evidence we summarized in our sufficiency-of-the-evidence analysis supporting Brown's conviction is weightier than the evidence against that conviction.

{¶34} Based upon the entire record before us, we do not conclude that the evidence weighs heavily against Brown's trafficking-in-drugs conviction under Count Two. Therefore, we do not conclude that the jury clearly lost its way, which

created a manifest miscarriage of justice such that Brown's conviction must be reversed and a new trial ordered.

{¶35} Accordingly, Brown's second and third assignments of error are overruled.

## First Assignment of Error

**Mr. Brown was denied the effective assistance of counsel at trial, in violation of his rights to the same under the Ohio Constitution and the United States Constitution.**

{¶36} In his first assignment of error, Brown argues that he was denied the effective assistance of counsel. He argues trial counsel consumed alcohol during the trial and had medical and mental-health issues. Further, Brown outlines a number of instances wherein his trial counsel's performance was deficient or unreasonable. Specifically, he argues that his attorney failed to object to Tipton's testimony; requested too many continuances; disclosed defense witnesses late; failed to provide a defense response to discovery; and did not pursue a counterfeit-controlled-substance defense. For the reasons that follow, we disagree.

*Standard of Review*

{¶37} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In order to show trial counsel's conduct was

deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

**{¶38}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

*Pre-trial:*

**{¶39}** We begin by addressing Brown's ineffective-assistance-of-counsel claims as they relate to pre-trial events. Specifically, Brown alleges that his attorney

-16-

requested too many continuances (for medical concerns) that impacted her ability to handle his case; that his attorney disclosed two defense witnesses late, which resulted in them not being permitted to testify; and that his attorney failed to provide a defense response to discovery.

**{¶40}** Starting with Brown's contention that his attorney requested too many continuances, Brown has not shown that he was prejudiced by any delay. Hence, we need not address this portion of his argument.[3]

**{¶41}** Brown's contentions regarding his attorney's failure-to-disclose and failure-to-provide-a-defense-response-to-discovery assertions also fail. Contrary to Brown's assertions, the record reveals that it was Brown who tarried in providing his attorney with defense discovery (i.e., text messages) until the first day of trial. The record further supports that trial counsel promptly disclosed the discovery to the prosecution and further requested the trial court to permit two new witnesses to testify notwithstanding their lack of inclusion on Brown's witness list. The trial court gave the prosecution time to investigate the new witnesses. Thereafter, the defense (in its case-in-chief) was permitted to call one of the witnesses (i.e., the CI's brother, Hunter Doenges ("Doenges")) at trial *over the State's objection*. Consequently, with respect to Doenges, Brown suffered no prejudice. The second

---

[3] Trial counsel requested continuances of the trial on July 19, 2021 (for an unspecified surgery), on February 1, 2022 (unspecified medical issue), and then again on February 18, 2022 (where she reported an inability to drive due to unspecified health-related issue). (Doc. No. 186).

witness (identified only as Ms. McLaurin) was never called to testify by the defense leaving open the question of whether counsel may have reassessed the value of her testimony, a choice, which would fall within the ambit of trial strategy.

{¶42} Based upon the limited record before us, it is speculative whether the witness who was not called (McLaurin) would have been of any assistance to Brown or if Brown had *any* other witnesses or evidence implicating the reciprocal duty to disclose prior to Brown's revelation of the text messages. Thus, Brown has failed to carry the burden of establishing that he was denied his right to the effective assistance of counsel under the prejudice prong of *Strickland* to his attorney's pre-trial actions.

*Trial:*

{¶43} Next, we address Brown's ineffective-assistance-of-counsel claims that occurred during the course of his trial. Specifically, Brown argues that his attorney's alcohol consumption and mental-health issues may have affected her performance at trial. Notably, Brown first raised his argument related to his trial counsel's alcohol consumption in the trial court in his motion for new trial. However, he never presented any arguments in the trial court regarding the alleged mental-health issues. Nevertheless, "the prejudice standards for plain-error and ineffective-assistance-of-counsel claims are the same * * *." *State v. Cervantes*, 3d Dist. Henry No. 7-21-06, 2022-Ohio-2536, ¶ 58. Regardless of what standard we apply, the outcome does not change.

{¶44} Even if we assume without deciding that Brown's trial counsel had consumed alcohol during the evening or at lunch recesses during the trial, and suffered from some form of mental-health issues following the trial, Brown has not directed us to *any* specific instances of deficient or unreasonable conduct attributable to the alcohol use and/or mental-health issues during the trial. Importantly, alcohol/drug use and mental illness by an attorney do not constitute ineffective assistance of counsel *per se*. *See Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir.1995), citing *Berry v. King*, 765 F.2d 451, 454 (5th Cir.1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2290 (1986); *McDougall v. Dixon*, 921 F.2d 518, 535 (4th Cir.1990), *cert. denied*, 501 U.S. 1223, 111 S.Ct. 2840 (1991); *Smith v. Ylst*, 826 F.2d 872, 876 (9th Cir.1987), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83 (1988). Counsel's performance at trial must be evaluated in light of the allegations. *Smith* at 876.

{¶45} Since Brown has failed to establish that his trial counsel's alleged alcohol use and/or purported mental-health issues resulted in trial counsel's deficient or unreasonable performance, he has failed to carry the burden of establishing that he was denied his right to the effective assistance of counsel as to this portion of his argument.

{¶46} Next, we address the portion of Brown's argument that involves his attorney's failure to object to Tipton's testimony. Specifically, Brown argues that Tipton was permitted to testify regarding drug-field-test-kit results to prove the

existence of cocaine in State's Exhibit 14. However, we can find no instances in the record where Tipton ever mentions drug-field testing or the concomitant results. However, Brown never asserted that the laboratory test results were irrelevant nor did he object to their admission under any other evidentiary basis. Thus, we will not conclude that his trial counsel's performance was deficient or unreasonable under this portion of his argument.

**{¶47}** Finally, we turn to address Brown's failure-to-pursue-a-counterfeit-controlled-substance defense assertion. Brown argues that under the facts of his case his trial counsel should have pursued a counterfeit-controlled-substance defense, which he argues was a better defense. We disagree. To us, this falls within the realm of trial strategy or tactics. In other words, Brown asks us to second-guess his attorney's trial strategy, which we decline to do. It is well-established that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524 (1992). *See also State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101 ("debatable trial tactics do not establish ineffective assistance of counsel"). Accordingly, Brown has failed to demonstrate that the actions of trial counsel were not part of a trial strategy and that the outcome of the trial would have been different.

**{¶48}** Accordingly, we reject Brown's ineffective assistance of counsel argument and overrule his first assignment of error.

**{¶49}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and POWELL, J.J., concur.**

**\*\* Judge Stephen W. Powell of the Twelfth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**

**/hls**