**[Cite as *State v. Tunison*, 2026-Ohio-1432.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio

    Appellee

v.

Paul B. Tunison

    Appellant

Court of Appeals No. {62}OT-25-024

Trial Court No. 21 CR 075

**DECISION AND JUDGMENT**

Decided: April 21, 2026

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé, Chief Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Paul Tunison, appeals the April 14, 2025 judgment of the Ottawa County Court of Common Pleas, sentencing him to a total prison term of 36 months after he pled guilty to two counts of theft in violation of R.C. 2913.02(A)(3), (B)(2), a fifth-degree felony; one count of attempted theft from a person in a protected class in violation of R.C. 2923.02(A)(3), (B)(3), a fourth-degree felony; and one count of theft from a person in a protected class in violation of R.C. 2913.02(A)(3), (B)(3), a fourth-degree felony. For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} Paul Tunison ran a company called Tunison Construction. Between June 17, 2019 and December 31, 2020, Tunison was contacted by four homeowners to complete projects on their houses. In each case, Tunison would submit a proposal to the homeowners with an estimated cost for work on their homes. Each homeowner would then write Tunison a check to cover the costs of the project—some were downpayments, some were paid in full. Tunison would then cash the check and never return to complete the work on the homes or return the money. In total, Tunison pocketed around $18,000 from the four homeowners—two of whom were elderly.

{¶ 3} On April 1, 2021, Tunison was indicted on two counts of theft—each a felony of the fifth degree, and two counts of theft from a person in a protected class—one a felony of the third degree and one a felony of the fourth.

{¶ 4} On April 17, 2023, Tunison pled guilty to two counts of theft, one count of attempted theft from a person in a protected class, and one count of theft from a person in a protected class. The trial court accepted the plea and set the matter for sentencing.

{¶ 5} The sentencing hearing was held on April 7, 2025. As discussed more thoroughly below, there are limited facts available from this hearing due to an incomplete transcript. Ultimately, on April 14, 2025, the trial court entered a judgment sentencing Tunison to six months for each theft count, twelve months for attempted theft from a person in a protected class, and twelve months for theft from a person in a protected class. The court held that the sentences were to be held consecutively for a total prison

2.

term of thirty-six months. Tunison was additionally ordered to pay restitution to each of the victims.

{¶ 6} Following his sentencing hearing, Tunison appealed to this court. He presents one assignment of error for our review:

> THE TRIAL COURT ERRED BY FAILING TO CREATE A COMPLETE AND ACCURATE RECORD OF THE SENTENCING HEARING, IN VIOLATION OF CRIM.R. 22, THEREBY PRECLUDING MEANINGFUL APPELLATE REVIEW AND REQUIRING REMAND FOR A NEW SENTENCING HEARING.

## II. Law and Analysis

{¶ 7} In his only assignment of error, Tunison argues that by providing a "fatally incomplete" recording of the sentencing hearing, the trial court violated Crim.R. 22 and made it impossible for him to challenge his sentence and for this court to conduct a meaningful review of his sentence. Accordingly, he asks this court to vacate his sentence and remand to the trial court for resentencing.

{¶ 8} Crim.R. 22 provides that in serious offense cases, "all proceedings shall be recorded." Because a serious offense includes "any felony," Crim.R. 2(C), and Tunison was sentenced to four felonies, by nature of the convictions, we address Tunison's convictions as serious offenses. Accordingly, the court had a duty to record the proceedings in this case. *See* Crim.R. 2(C) and Crim.R. 22.

{¶ 9} "[A] court's failure to comply with Crim.R. 22 is not inherently prejudicial given the alternative to a transcript available under App.R. 9." *State v. McClusky*, 2004-Ohio-85, ¶ 16 (6th Dist.); *see also State v. Conner*, 2011-Ohio-146, ¶ 11 (6th Dist.) ("The malfunction of recording equipment in the trial court does not result in prejudice per

3.

se."), citing *State v. Ward,* 2003-Ohio-5650, ¶ 28 (4th Dist.); *State v. Drake*, 73 Ohio App.3d 640, 647 (8th Dist. 1991).

{¶ 10} In criminal cases, a court will not reverse the convictions of a defendant due to unrecorded bench and chamber conferences, off-the-record discussions, or other unrecorded proceedings, unless "(1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue." *State v. Palmer*, 80 Ohio St. 3d 543, 554 (1997).

{¶ 11} Our review of Tunison's assignment of error begins with the recording of the sentencing hearing. Here, while Tunison's sentencing hearing was recorded, the transcript ends abruptly prior to the imposition of Tunison's sentence. From what is available in the record, we know that Tunison agreed to restitution; that the State argued for a "significant prison sentence," while defense counsel argued for community control; and that Tunison provided a statement in allocution. Following his allocution, the trial court began reciting the counts that Tunison had pled to but the official transcript ends partway through the recitation of count three stating, "(Thereupon the recording ended.)."

{¶ 12} It is clear from what little transcript we have that a recording system was used for the sentencing hearing. It is therefore logical to presume that given the abrupt end to the recording, that the court's failure to fully record the hearing was the product of an oversight or technological malfunction beyond the parties' control. We turn next to whether "an effort was made on appeal to comply with App.R. 9." *Palmer* at 554.

4.

{¶ 13} As noted by the Ohio Supreme Court, "'[t]he procedures outlined in App.R. 9 are designed precisely for this type of situation, where a transcript is unavailable.'" *Cleveland v. McGervey*, 2022-Ohio-3911, ¶ 17 (8th Dist.), quoting *In re B.E.*, 2004-Ohio-3361, ¶ 14. Accordingly, even though the trial court had a duty to record the sentencing hearing, Tunison also had a duty to provide this court with the transcript for appellate review. *See Conner*, 2011-Ohio-146, at ¶ 9 (6th Dist.), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

{¶ 14} "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp* at 199. Therefore, when a complete transcript is not available, an "appellant has the option of providing a narrative statement of the proceedings, as provided for in App.R. 9(C), or an agreed statement, as provided for in App.R. 9(D)." *Conner* at ¶ 10. Additionally, "App.R. 9(E) makes provision for the correction or supplementation of the record when material omissions have occurred by 'error or accident.'" *Id*.

{¶ 15} Here, while we agree with Tunison that the transcript is unavailable through no fault of the parties, he makes no attempt to comply with App.R. 9 to reconstruct what occurred at the sentencing hearing. Tunison contends that the transcript is missing the "the entire substance of the sentencing decision"—specifically taking issue with the silence relating to (1) the imposition of sentence, (2) whether his sentences were to be served concurrently or consecutively, (3) the consideration of the purposes and

5.

principles of sentencing under R.C. 2929.11, (4) the consideration of the seriousness and recidivism factors under R.C. 2929.12, and (5) and mandatory advisements regarding post-release control. None of these claims actually present any recollection of what happened after the recording cuts out. Additionally, Tunison has not filed any kind of motion in accordance with App.R. 9 to correct the record.

{¶ 16} While our analysis could end here, in addition to reconstructing the proceeding under App.R. 9, Tunison is also required to show that "material prejudice resulted from the failure to record the proceedings at issue." *Palmer*, 80 Ohio St. 3d at 554. Tunison's entire argument on this matter consists of him simply stating the arguments that he believes he can no longer make due to the missing transcript. Such "general averments," however, "do not act as a substitute for an actual showing of prejudice." *Id*. at 555, citing *State v. DePew*, 38 Ohio St.3d, 275, 279 (1988) (allegations that information missing from the record "could be vital" do not amount to the required demonstration of prejudice); *see also State v. Walton*, 2006-Ohio-1974, ¶ 13 (2d Dist.) ("Defendant must demonstrate that effective review will be precluded, and that prejudice will result from the incompleteness of the record.… Absent an indication that Defendant has been prejudiced by the absence of items from the record, reversible error has not been demonstrated.").

{¶ 17} Accordingly, in the absence of any attempt to reconstruct the missing portions of the record or to show how the missing portions will prejudice him, Tunison has waived any error. *See In re B.E.*, 2004-Ohio-3361, at ¶ 15; *see also State v. Brewer*, 48 Ohio St.3d 50, 61 (1990).

6.

### III. Conclusion

**{¶ 18}** While the trial court had a duty to record the proceedings and Tunison is correct that the sentencing transcript is defective, he was required to comply with App.R. 9 and explain how he was prejudiced to be eligible for relief. *See Palmer* at 555; *see also In re B.E.* at ¶ 15. Seeing that Tunison did not comply with these requirements, we find his only assignment of error not well-taken. Accordingly, we affirm the April 14, 2025 judgment of the Ottawa County Court of Common Pleas. Tunison is ordered to pay any costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.

_____
JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.